IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                    |   |                                |
|------------------------------------|---|--------------------------------|
|                                    | : |                                |
| MYCOSAFE DIAGNOSTICS GMBH          |   |                                |
|                                    | : |                                |
| v.                                 | : | Civil Action No. DKC 12-2842   |
|                                    | : |                                |
| LIFE TECHNOLOGIES CORPORATION,     |   |                                |
|   ET AL.                           | : |                                |

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract case is a motion filed by Defendants Life Technologies Corporation ("Life") and Applied Biosystems, LLC ("AB") to dismiss for lack of personal jurisdiction. (ECF No. 7). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted, and this action will be transferred to the Southern District of California.

**I.   Background**

   **A.   Factual Background**

The following facts are alleged in the first amended complaint. (ECF No. 5). Plaintiff Mycosafe Diagnostics GMBH ("Mycosafe") is a corporation organized under the laws of the Republic of Austria and maintains its principal place of business in Vienna, Austria. Mycosafe is a research

organization that provides consulting and testing services in connection with mycoplasma detection and safety.

Life is a Delaware corporation that maintains its principal place of business in Carlsbad, California.  Life is a global biotechnology company that manufactures and sells mycoplasma-detection kits.  Life is registered to do business in the state of Maryland and owns a facility located in Frederick, Maryland, where it employs approximately 250 people.  In 2009, Life received a grant from the Office of Economic Development for Frederick County, Maryland.  That same year, Life paid local property taxes on five different properties in Frederick County.

AB is a wholly owned subsidiary of Life's.  AB is a limited liability company that is organized under the laws of Delaware and maintains its principal place of business in Carlsbad, California.  AB is registered to do business in Maryland and "transacts systematic and continuous business" in the state, including at Life's Frederick location.

On October 27, 2009, Defendants requested a quote from Mycosafe for the costs associated with testing certain mycoplasma-detection kits manufactured by Defendants to determine the kits' effectiveness and compliance with international regulations.[1]  On October 30, Mycosafe sent the

---

[1]  Except in the headings titled "The Parties" and "Jurisdiction and Venue," the factual allegations in the amended

requested quote to the attention of "Dr. Mike Brewer, Senior Manager" of "Applied Biosystems-Life Technologies" at a California address. Shortly thereafter, Defendants asked Mycosafe to proceed with conducting the studies.

At Defendants' direction, on December 18, 2009, Mycosafe sent its first invoice for €21,480 directed to the attention of "Applied Biosystems" at a California address. Defendants paid this invoice in full on January 27, 2010. During this same time period, Defendants requested an expansion in the scope of Myscosafe's services, as reflected in both the "draft study protocol" sent to Mycosafe in December 2009 and the final "Validation Study Plan" signed by all parties in February 2010. Mycosafe performed testing on Defendants' kits in accordance with the parties' correspondence – namely, Defendants' original quote request; the quote provided by Mycosafe; the draft study protocol; and the Validation Study Plan. Although Defendants had agreed to provide Mycosafe with all of the kits needed to conduct this testing, Mycosafe ultimately used a number of kits that it had independently purchased from Defendants at a cost of €37,406.40, with the expectation that this amount would be reimbursed by Defendants.

---

complaint do not distinguish between AB and Life, but refer to them collectively as "Defendants." (*See generally* ECF No. 5).

Mycosafe provided a draft report to Defendants detailing the results of its tests on September 3, 2010. On three separate occasions thereafter, Defendants asked Mycosafe to perform additional testing. Defendants made one of these requests during a November 2010 visit to Mycosafe's facility in Austria.

On March 2, 2011, Mycosafe provided a final report to Defendants reflecting all testing work performed to date and the corresponding results. On the same day, Mycosafe sent four invoices totaling €210,000 to Defendants. Each of these invoices is directed to "Applied Biosystems – Life Technologies" at a California address. To date, Defendants have paid only €23,100 against these invoices and have not reimbursed Mycosafe for the costs of certain kits used in the testing.

**B.   Procedural Background**

On September 24, 2012, Mycosafe filed a complaint against Defendants in this court alleging counts for breach of contract, account stated, and unjust enrichment. (ECF No. 1). On November 2, 2012, Defendants moved to dismiss for lack of personal jurisdiction and improper venue. (ECF No. 3). In response, Mycosafe filed an amended complaint pursuant to Fed.R.Civ.P. 15(a)(1)(B). (ECF No. 5). On December 3, Defendants moved to dismiss the amended complaint for, *inter alia*, lack of personal jurisdiction pursuant to Fed.R.Civ.P.

12(b)(2).   (ECF No. 7).   Mycosafe filed an opposition (ECF No. 8), and Defendants replied (ECF No. 9).

## II.  Analysis

### A.  Personal Jurisdiction

When a court's power to exercise personal jurisdiction is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted).   If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396.   In determining whether the plaintiff has met its burden, all jurisdictional allegations must be construed in the light most favorable to the plaintiff, and the most favorable inferences must be drawn for the existence of jurisdiction. *New Wellington Fin. Corp. v.*

*Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (internal quotation marks omitted).

"The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction." *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 703 (D.Md. 2004). Specific personal jurisdiction applies where a controversy is "related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). General jurisdiction, by contrast, may be exercised where a defendant maintains "continuous and systematic" contact with the forum state. *Helicopteros*, 466 U.S. at 415 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)).

Where the defendant is a nonresident, a federal district court may exercise personal jurisdiction only if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). The Maryland Long-Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan,*

*Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) (citing *Androutsos v. Fairfax Hosp.*, 323 Md. 634, 637 (1991)).   This broad reach does not suggest that analysis under the long-arm statute is irrelevant; rather, it reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." *Dring v. Sullivan*, 423 F.Supp.2d 540, 545 (D.Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118-19 n. 2 (D.Md. 1995)); *see also Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n. 6 (2006) (although the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to dispense with analysis under the long-arm statute").   To satisfy the long-arm prong of the analysis, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion.   *See Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md. 2001); *Johansson*, 304 F.Supp.2d at 704 n. 1.

The Maryland Long-Arm Statute provides, in relevant part:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

7

(b)  A   court   may   exercise   personal jurisdiction over a person, who directly or by an agent:

> (1) Transacts any business or performs any character of work or service in the State;

> (2) Contracts to supply goods, food, services, or manufactured products in the State;

> (3) Causes tortious injury in the State by an act or omission in the State;

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

> (5) Has an interest in, uses, or possesses real property in the State; or

> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103.

In its opposition, Mycosafe argues that, pursuant to subsection (b)(4) of the Maryland Long-Arm Statute, this court has general jurisdiction over Defendants based on their

systematic and continuous business activity that is "indicative of entities domiciled in Maryland." (ECF No. 8, at 4-5).[2] Defendants raise two principal arguments in reply. First, Defendants contend that the limitation imposed by subsection (a) of the Maryland Long-Arm Statute cannot be met here, given that none of Mycosafe's claims "arise from the facts alleged as the basis for jurisdiction." (ECF No. 9, at 6). Second, Defendants contend that Mycosafe cannot rely on subsection (b)(4) as the complaint sounds in contract and does not allege any "tortious injury." (*Id.* at 5-6). Although Defendants' first argument fails, their second position is availing.

### 1.   The Limitation Imposed By Subsection (a)

As noted above, subsection (a) of the Maryland Long-Arm Statute requires that, "[i]f jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." Based on this language, Defendants contend that Mycosafe is precluded from relying on *any* provision in subsection (b) because its

---

[2] Mycosafe concedes that Defendants – which are alleged to be organized under Delaware law and to have their principal places of business in California – are non-residents. (*See* ECF No. 8, at 4-7). Mycosafe thus addresses only the applicability of the Maryland Long-Arm Statute and does not contend, either in its complaint or its opposition, that personal jurisdiction is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102(a), which provides that "[a] court may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State."

causes of action do not arise from any of Defendants' alleged contacts in Maryland – namely, their activities in Frederick County. Specifically with respect to subsection (b)(4), Defendants contend that, because Mycosafe's claims do not arise from Defendants' conduct in "regularly do[ing] or solicit[ing] business, engag[ing] in any other persistent course of conduct in the State or deriv[ing] substantial revenue from . . . services . . . in the State," subsection (a) is not satisfied.

Had Mycosafe asserted specific jurisdiction based on any other provision in subsection (b), Defendants' argument would be well-taken. Clearly, there is no connection between Defendants' alleged contacts with Maryland and the alleged events giving rise to Mycosafe's claims. Thus, Defendants are correct in arguing that Mycosafe cannot rely on subsections (b)(1), (b)(2), (b)(3), (b)(5), or (b)(6), each of which requires such a connection.

For purposes of jurisdiction under subsection (b)(4), however, Defendants' argument misreads the language of the Maryland Long-Arm Statute. When the limitation imposed by subsection (a) is applied to that provision, the "act" from which a plaintiff's causes of action must arise is the "act or omission outside the State" that "[c]auses tortious injury in the State or outside of the State" – *not* the conduct enumerated in the latter portion of the provision (*i.e.*, regularly doing or

10

soliciting business, engaging in any other persistent course of conduct, or deriving substantial revenue from services performed in the State).  As explained by the Maryland Court of Appeals:

> The reference [in subsection (a)] to 'act enumerated in this section' with respect to subsection (b)(4) refers only to the act or omission which causes tortious injury; to hold otherwise would be to impose a limitation not required by due process. Furthermore, subsection (b)(4) would add little or nothing to the statute if it were held that the cause of action must arise out of the defendant's doing or soliciting business, engaging in any other persistent course of conduct or deriving substantial revenue from activities in the State.  Such actions would be provided for in other sections of § 6-103.

*Geelhoed v. Jensen*, 277 Md. 220, 232 (1976); *see also, e.g.*, *Paxton v. S. Penn. Bank*, 93 F.R.D. 503, 505 n. 2 (D.Md. 1982) ("If, in fact, [defendant] does business in Maryland, engages in any other persistent course of conduct in Maryland, or derives substantial revenue from services performed in Maryland, long-arm jurisdiction would exist despite the fact that the acts which may give rise to the (b)(4) findings are unconnected with the [negligence] cause of action asserted."); *Carter v. Massey*, 436 F.Supp. 29, 32 (D.Md. 1977) ("[N]either the regular solicitation of business, nor the persistent course of conduct, nor the substantial revenues required within the State by § 6-103(b)(4) of the Maryland statute need have a relationship to the acts or omissions that caused the tortious injury."); *cf.*

*Tech. Patents, LLC v. Deutsche Telkom AG*, 573 F.Supp.2d 903, 912 n. 11 (D.Md. 2008) ("Subsection (b)(4) has been construed by the Maryland courts as a general jurisdiction statute . . . .").[3]

Thus, the lack of a connection between Defendants' alleged acts and omissions giving rise to Mycosafe's claims and Defendants' contacts with the state of Maryland is not, in and of itself, fatal to Mycosafe's reliance on subsection (b)(4) to satisfy the statutory prong of the personal jurisdiction analysis.

### 2. Subsection (b)(4)'s "Tortious Injury" Requirement

Defendants are nevertheless correct that Mycosafe's assertion of a claim for unjust enrichment does not satisfy the "tortious injury" requirement in subsection (b)(4).

Although the Maryland Long-Arm Statute does not define the phrase "tortious injury," the Maryland Court of Special Appeals has interpreted the phrase on one occasion. In *Green v. N.B.S.,*

---

[3] In support of their reading of the Maryland Long-Arm Statute, Defendants principally rely on *Egeria, Societa di Navigazione Per Azioni v. Orinoco Mining Co.*, 360 F.Supp. 997 (D.Md. 1973), where the court indicated that the predecessor to subsection (b)(4) did not authorize jurisdiction when a defendant's alleged derivation of substantial revenue in Maryland was unconnected to the causes of actions asserted in the complaint. That portion of the *Orinoco Mining* opinion has been expressly rejected in subsequent decisions. *See Paxton*, 93 F.R.D. at 505 n. 2; *see also Greenwood v. Tides Inn, Inc.*, 504 F.Supp. 992, 996 n. 11 (D.Md. 1980) (explaining that, although the result in *Orinoco Mining* was proper, its discussion regarding the predecessor to subsection (b)(4) "would appear erroneous").

*Inc.*, 180 Md.App. 639 (2008), *aff'd*, 409 Md. 528, the court addressed whether a violation of Maryland's Consumer Protection Act constituted "tortious conduct," as that phrase is used in the state's statutory damages cap for personal injury actions, Md. Code Ann., Cts. & Jud. Proc. § 11-108. The plaintiff in *Green* argued that, because a cause of action under the Maryland Consumer Protection did not exist at common law, a violation of the statute could not constitute "tortious conduct" for purposes of the damages cap. 180 Md.App. at 646. In rejecting this argument, the court relied on the plain meaning of the phrase "tortious conduct," observing that the dictionary defines "tortious" as "'[c]onstituting a tort; wrongful'" and "tort" as "'[a] civil wrong for which a remedy may be obtained, usually in the form of damages; a breach of a duty that the law imposes on everyone in the same relation to one another as those involved in a given transaction.'" *Id.* at 647 (quoting Black's Law Dictionary 1497 (7th ed. 1999)). Based on these definitions, the *Green* court reasoned that a claim need not derive from common law to involve "tortious conduct" within the meaning of Section 11-108. In support of its conclusion, the *Green* court observed that, for purposes of the "tortious injury" requirement in subsections (b)(3) and (b)(4) of the Maryland Long-Arm Statute, "the fact that a cause of action is statutory is irrelevant to the issue of deciding whether the defendant committed a tortious

13

act . . . resulting in injury." *Id.* at 651 (citing *Craig v. Gen. Fin. Corp. of Ill.*, 504 F.Supp. 1033, 1037 (D.Md. 1980)).

Although *Green* does not resolve the issue directly, it suggests that Mycosafe's claim for unjust enrichment satisfies subsection (b)(4) only if it alleges an injury resulting from a "civil wrong" or "a breach of a duty that the law imposes on everyone in the same relation to one another as those involved in a given transaction." *Green*, 180 Md.App. at 647. Deciding this question thus requires an examination of both the nature of an unjust enrichment claim under Maryland law and the allegations in the amended complaint.

In Maryland, a cause of action for unjust enrichment is based on quasi-contract, meaning a contract that is implied by the law. *Alts. Unlimited Inc. v. New Baltimore City Bd. of Sch. Comm'rs.*, 155 Md.App. 415, 494 (2004). The *Alternatives Unlimited* court explained that a plaintiff may prevail on an unjust enrichment claim if "services are rendered by request, but . . . the parties have no valid and enforceable contract" because "the defendant may still be liable for the value of the plaintiff's services." *Id.* at 498 (internal quotation marks and citations omitted). The court also noted that "[w]hat is essential" about this type of unjust enrichment claim "is that the defendant receives a benefit *without fault or breach of duty on his part*, yet is at least arguably under a duty to give up

14

that benefit on the ground that otherwise he will be unjustly enriched." *Id.* at 456 (emphasis added) (internal quotation marks omitted).

This is precisely the scenario alleged in Mycosafe's amended complaint. In Count I for breach of contract, Mycosafe seeks a judgment in the amount of $305,002.30 for Defendants' alleged breach of an agreement with Mycosafe for the performance of certain testing services. (ECF No. 5 ¶¶ 42-50). In Count III for unjust enrichment, Mycosafe seeks a judgment in an identical amount ($305,002.30), based on allegations (1) that Mycosafe conferred a benefit upon Defendants by performing certain testing services and (2) that it would be inequitable for Defendants to retain the benefit of Mycosafe's services without making full payment. (*Id.* ¶¶ 56-61). Thus, Mycosafe has alleged a claim for unjust enrichment as an alternative theory of liability. In other words, in the event that Mycosafe cannot establish an enforceable contract with Defendants, it will argue that the law should imply a contract to prevent unjust enrichment. Such a claim does not allege "tortious injury" for purposes of subsection (b)(4) as it does not assert that Defendants committed a "civil wrong" or "breach[ed] a duty that the law imposes on everyone." *Green*, 180 Md.App. at 647.[4]

---

[4] Mycosafe does not argue that "Count II – Account Stated" alleges a "tortious injury" for purposes of the Maryland Long-

This conclusion is in accord with the holdings of several other courts that a claim for unjust enrichment does not satisfy the "tortious injury" or "tortious act" requirement in similarly worded long-arm statutes. *See, e.g.*, *Kinetic Co. Inc. v. BDO EOS Svetovanje, d.o.o.*, 361 F.Supp.2d 878, 883-84 (E.D.Wis. 2005) (a claim for unjust enrichment does not "relate[] to a tort injury" and does not allege "tortious injury" for purposes of Wisconsin's long-arm statute); *Franceskino v. Womak*, 3:01CV1835, 2002 WL 100602, at *1, *3 (D.Conn. Jan. 25, 2002) ("tortious act" requirement in Connecticut's long-arm statute was not met where plaintiff asserted claims for breach of contract, promissory estoppel, and unjust enrichment because "the complaint simply fails to state any cause of action grounded in tort and, instead, is composed of claims arising in contract and quasi-contract").

In its opposition, Mycosafe cites a number of extra-jurisdictional cases as standing for the proposition that

_____

Arm Statute, nor could it, given that a claim for account stated requires an agreement between the parties and thus sounds in contract. *See SunDance Rehab. Corp. v. Hermitage Healthcare of Manokin Manor, LLC*, Civ. No. WMN-12-153, 2012 WL 2190749, at *4 (D.Md. June 13, 2012) (a claim for account stated requires "an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance" (quoting *Wathen v. Perace*, 3 A.2d 486, 491 (Md. 1939)).

"language concerning tortious conduct in a state's long-arm statute should not be confined to traditional concepts of a tort." (ECF No. 8, at 6). As Defendants note, however, the majority of these cases address whether a statutory claim can meet the "tortious inquiry" requirement – the question addressed by the Maryland Court of Special Appeals in *Green*. *See, e.g.,* *Reese v. Arrow Fin. Servs.*, 202 F.R.D. 83, 88 (D.Conn. 2001) (addressing without deciding whether a violation of the Fair Debt Collection Practices Act constitutes "tortious conduct"); *Kearns v. Wood Motors, Inc.*, No. 8-70642, 1978 U.S. Dist. LEXIS 14542, at *5 (E.D.Mich. Nov. 5, 1978) (federal patent infringement claim is an "action for tort" for purposes of Michigan's long-arm statute).

Neither *Green* nor the cases cited by Mycosafe suggest that the "tortious injury" requirement should be read out of the Maryland Long-Arm Statute altogether.[5]  Indeed, construing subsection (b)(4) so broadly as to encompass a complaint that

---

[5]  Mycosafe also relies on a case holding that a defendant's execution of false affidavits and assignments on behalf of a mortgage company satisfies the "tortious injury" requirement in Ohio's long-arm statute. *See Ohio ex rel. DeWine v. GMAC Mortg. LLC*, No. 10CV2537, 2011 WL 1884543, at *1-2 (N.D.Ohio May 18, 2011). Although the *GMAC* court noted that "Ohio courts seem to be quite willing to give a broad definition to tortious conduct," *id.* (internal quotation marks omitted), nothing in that opinion suggests that conduct giving rise to a contractual or quasi-contractual claim would be included in this "broad definition."

asserts only contractual and quasi-contractual claims would, in effect, dispense with the first prong of the personal jurisdiction analysis – an approach that has been expressly rejected by Maryland's highest court. *See Mackey*, 391 Md. at 141, n. 6.

Because Mycosafe fails to establish that the alleged conduct falls within the language of Maryland's Long-Arm Statute, this court is precluded from exercising jurisdiction over Defendants, and there is no need to decide whether Defendants' contacts with Maryland satisfy constitutional due process requirements.[6]

### B.   Dismissal or Transfer

Because personal jurisdiction over Defendants is lacking, it must next be decided whether to dismiss this action or transfer it to another district pursuant to 28 U.S.C. 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "'[T]he Fourth Circuit has adopted a reading of section 1406(a) authorizing transfer 'for any reason which constitutes an impediment to a decision on the

---

[6] Likewise, Defendants' arguments regarding dismissal for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) will not be addressed.

merits in the transferor district but would not be an impediment in the transferee district.'" *Estate of Bank v. Swiss Valley Farms Co.*, 286 F.Supp.2d 514, 522 (D.Md. 2003) (quoting *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988)). Lack of personal jurisdiction is one such "impediment." *Id.* Whether to dismiss or transfer an action under section 1406(a) rests within the discretion of the court. *Id.*

The record here indicates that dismissal would not be in the interest of justice. In its opposition to Defendants' motion to dismiss, Mycosafe argues in the alternative that the case should be transferred to the District of Delaware, the state under whose laws Life and AB are organized. (ECF No. 8, at 8-11). In reply, Defendants contend that "this matter is most properly heard in California," where Defendants maintain their principal offices and which is "the only state in which any of the subject events took place." (ECF No. 9, at 11-13). In light of these arguments, it appears likely that outright dismissal would result in two events: (1) Mycosafe's re-filing of this case in the District of Delaware, followed by (2) Defendants' filing of a formal motion to transfer pursuant to 28 U.S.C. § 1404(a). In other words, dismissal will almost surely result in re-litigating many of the same issues that have already been briefed by the parties here.

To avoid further delay in resolving the merits of this dispute, the court will exercise its discretion under section 1406(a) to transfer rather than dismiss this case. As both parties concede, the jurisdictional allegations in the amended complaint establish that Mycosafe could have brought this case either in the District of Delaware or the Southern District of California. (*See* ECF No. 7-1, at 11; ECF No. 8, at 11-12). The inquiry thus becomes which forum is more appropriate based on the factors typically considered in resolving motions to transfer. *See, e.g., Goffe v. Blake*, 605 F.Supp. 1151, 1160 (D.Del. 1985) (when two potential transferee courts were both districts "in which [the action] could have been brought," transferring to the "more appropriate forum" based on the convenience of the parties, the location of the witnesses, and the interest of justice); *accord Gov't of Egypt Procurement Office v. M/V Robert E. Lee*, 216 F.Supp.2d 468, 473 (D.Md. 2002) (transfers under section 1406(a) should be based on an individualized inquiry into "private factors such as the convenience of obtaining witness testimony and physical evidence, as well as public factors such as the forum's public policy interest in hearing the case") (internal quotation marks omitted).

Consideration of the relevant factors establishes that the Southern District of California is a more appropriate forum.

20

First, Mycosafe misses the mark in arguing that its choice of Delaware as an alternative forum should be given deference. Although "a plaintiff's choice of forum is ordinarily accorded considerable weight," *Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002), this "weight is lessened when either (1) the chosen forum is not the plaintiff's home, or (2) the chosen forum has little or no connection to the events giving rise to the litigation," *Tse v. Apple Computer*, Civ. No. L-05-2149, 2006 WL 2583608, at *2 (D.Md. Aug. 31, 2006). Delaware is not Mycosafe's home state, nor does it have any connection to the alleged events giving rise to Mycosafe's claims against Defendants.  Moreover, given that Mycosafe has offered Delaware as its *second* forum choice, it is not clear that the ordinary rule of deference should apply at all.

Second, as to the convenience of the witnesses, Mycosafe has not identified any witnesses located in Delaware.  Rather, Mycosafe makes an unsubstantiated assertion that there are three witnesses are likely to be called in this matter:  one who lives in Austria, one who lives in Colorado or Massachusetts, and one who lives in Massachusetts.  Defendants, by contrast, point out that any of their corporate representatives who may be deposed will likely be produced in California, where they maintain their principal offices.  Thus, this factor weighs in favor of transferring to the Southern District of California.

Third, as to the convenience of the parties, the Southern District of California is a more preferable forum for Defendants, both of which maintain their principal offices in Carlsbad, California.  Defendants also represent that they would suffer a hardship if the case is transferred to Delaware because their chosen counsel does not maintain offices there.  As an Austrian entity, Mycosafe will need to travel internationally regardless of whether the case is transferred to California or Delaware.  Obviously, however, Delaware is closer to Austria than California.  Accordingly, this factor is neutral.

Finally, the interest of justice weighs in favor of transfer to the Southern District of California.  Although Mycosafe contends that "all of the events giving rise to this matter in controversy took place in Austria" (ECF No. 8, at 8), the exhibits attached to the amended complaint indicate that Plaintiff sent all of the invoices at issue in this action to a California address (ECF Nos. 5-5, 5-7, 5-9, 5-10, 5-11, 5-12).[7] Thus, to the extent that any U.S. state has a connection to the alleged events giving rise to Mycosafe's causes of action, that state is California, not Delaware.

---

[7] Although the invoices were sent to Defendants' offices in Foster City, California, which is located in the Northern District of California, no party has raised any argument regarding the propriety of a transfer to that district.

Mycosafe also argues that transfer to the Southern District of California "would cause undue delay in the progression of this case, and would prejudice Plaintiff" because it "is one of the most congested districts in the country." (ECF No. 8, at 8). Docket conditions, including whether a transferee court may be able to "resolve the suit more efficiently and/or quickly," can be a "minor consideration" in the interest of justice analysis. *Kabat v. Bayer Cropscience LP*, No. 3:07-CV-555, 2008 WL 2156744, at *5 (E.D.Va. May 22, 2008). As Defendants note, however, a high number of case filings alone "does not speak to the current status" of a court's docket. (ECF No. 9, at 13). Indeed, the very same statistics relied on by Mycosafe indicate that the median time from filing to disposition in civil cases is 6.4 months in the Southern District of California, as compared to 9.8 months in the District of Delaware.[8]

On balance, the relevant factors indicate that the Southern District of California is a more appropriate venue than the District of Delaware, and transfer will be ordered accordingly.

## III. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted, and this action will be transferred

---

[8] Federal Court Management Statistics, December 2011, http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2011/District_FCMS_Profiles_December_2011.pdf&page=14 (last visited Jan. 10, 2013).

to the Southern District of California.    A separate Order will
follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge